Welch, J.
The plaintiff wishes to develop two lots which he owns in a subdivision labeled the “Lynnebrooke Parish Subdivision,” located in Ipswich. When the plaintiff applied for a building permit from the building inspector for the Town of Ipswich, he was informed that he would need to seek a variance because the lots were nonconforming with the current zoning set back requirements. The plaintiff responded that he did not need a variance and was entitled to a building permit as of right in that these two lots were “grandfathered” pursuant to C. 40A, §6, ¶4. The zoning board of appeals rejected this argument because it found that, at the date that the zoning by-law was enacted, Philip Hansbury had effective control over the lots adjoining the two lots at issue.
The two lots at issue are 3 Howard Street and 4 Howard Street. Each lot was the subject of a separate lawsuit. Because the factual and legal issues are identical, the two cases were consolidated. A jury-waived trial was held.
The facts in this case are agreed upon. See Exhibit 1. To summarize, Philip J. Hansbury, the plaintiff, and his wife, Charlotte F. Hansbury, owned a large track of land in Ipswich which they sold to a Massachusetts corporation named Randall Associates, Inc. The land transfer occurred on July 30, 1955. Plaintiff Philip Hansbury was and is the President, Treasurer and Clerk of Randall Associates, Inc. He and his wife are the sole shareholders of that corporation.
Randall Associates filed a sub-division plan for this parcel on September 6, 1955 and a final plan was filed on September 20, 1955. The plan was approved, at least conditionally, on October 18, 1955. The plan showed roughly 39 lots. Approximately three months later, on January 19, 1956, Randall Associates conveyed eleven lots shown on the subdivision plan back to Philip J. Hansbury. None of the conveyed lots were adjoining lots. Zoning was first adopted by the Town of Ipswich on December 24, 1957, almost two years after this conveyance of the non-adjoining lots.
The parties agree that large portions of the subdivision were developed. This included various lots which Randall Associates had sold back to Hansbury and which Hansbury later sold to other individuals. Hansbury, however, still owns, over forty years after the subdivision plan was filed and the conveyances made, at least two lots within the subdivision. These are the two lots, 3 Howard Street and 4 Howard Street, that are at issue. There is no dispute that Mr. Hansbury no longer controls the lots adjoining these two parcels because Randall has long since sold those lots to other individuals.
The issue in these cases, starkly presented, is whether the over forty-year-old conveyances constituted “checkerboarding” and, thus, an inappropriate attempt to avoid the zoning by-law or whether these lots are legitimately grandfathered and exempted from the current zoning by-law provisions. The parties agree that this case presents a purely legal determination. Indeed, both sides rely upon the same group of decisions rendered by the Massachusetts appellate courts. The plaintiff vigorously argues that such cases as Sorenti v. Board of Appeals of Wellesley, 345 Mass. 348 (1963); Norwell v. Serena, 27 Mass.App. 689 (1989), and DiStefano v. Stoughton, 36 Mass.App. 642 (1994), focus on the time of the transfer in relation to the zoning change. For example, in Sorenti, the transfer took place one day before the zoning change. The transfer was similarly close in time in the Serena (four days) and DiStefano (16 days) cases. Here the plaintiff *330 emphasizes that Mr. Hansbury had the eleven non-adjoining lots deeded back to him approximately two years before the Town of Ipswich adopted the zoning by-law, a time considerably longer than that involved in the reported cases. The plaintiff also emphasizes that this land transfer occurred three years before the so-called grandfather provision contained in Section 6 of Chapter 40A was adopted. This, the plaintiff argues, demonstrates that the plaintiff had no intent to engage in some sort of “checkerboard” conveyancing.
The defendant’s response is equally vigorous. They argue that the January 1956 transfer from the corporation to Hansbury speaks for itself in that the deed explicitly conveyed eleven non-adjoining lots. The defendants assert that the law in this area does not focus upon the intent of the developer, but rather the fact that non-adjoining lots were conveyed in a checkerboard type of fashion in order to defeat any future zoning provisions. The defendants also argue that one must focus upon the developer’s control of the adjoining lots at the date of the last transfer (i.e. January 1956) or, at most, the effective date of the zoning by-law (December 1957) and not upon the plaintiffs current ability to control adjoining lots.
Although not free from doubt, the defendants have the better side of the argument and judgment must enter for them.
It is important to note what is not disputed. Both sides agree that the two lots In question comply with the provisions of Chapter 40A, §6 ¶4 in that they contain sufficient frontage (each lot contains well over fifty feet of frontage) and sufficient area (each lot contains well over five thousand square feet). The two lots are in no way peculiar in layout and are similar to the adjoining lots. Compare Sorenti, supra. In addition, there is no claim that the plaintiff does not control the corporate entity which owned the adjoining land as of the effective date of the zoning by-law. Although Randall Associates is a valid Massachusetts corporation, the plaintiff (who after all is the President, Treasurer, Clerk and co-owner of Randall Associates, Inc.) does not claim a lack of control over the corporation or the property it owns. In addition, the defendants have presented no evidence to establish any intent on the part of the plaintiff to evade the zoning by-law provisions which were enacted roughly two years after the land transfer.
The grandfather provision of Chapter 40A, §6 ¶4 imposes the condition that the non-conforming lot “not [be] held in common ownership with any adjoining land.” As the Appeals Court explained, this “represents a statutory codification of a principle of a long-standing application in the zoning context: A land owner will not be permitted to create a dimensional nonconformity if he could have used his adjoining land to avoid or diminish the nonconformity.” Planning Board of Norwell v. Serena, 27 Mass.App. 689, 690 (1989). See Sorenti v. Board of Appeals of Wellesley, 345 Mass. at 353. There appears to be no significant dispute that the plaintiff — who with his wife — owned Randall Associates, Inc., controlled the adjoining lots when the eleven lots were conveyed on January 19, 1956. See DiStefano v. Stoughton, §360 Mass. App. at 645. The fly in the ointment of this case, however, is that — unlike other cases invalidating checkerboard-ing — the plaintiff no longer controls the adjoining land and has not for decades.
Various cases which have found the existence of “checkerboard” conveyances and have ruled that the grandfathering provision of Section 6 does not apply dealt with situations were the proposed developer was still in constructive control of the adjoining lots. See, e.g., DiStefano v. Stoughton, 36 Mass.App. at 643; Planning Board of Norwell v. Serena, 27 Mass.App. at 690. But compare Sorenti v. Board of Appeals of Wellesley, 345 Mass. at 351. In other cases, it was plain, either from the trial judge’s findings or from the undisputed facts, that the developer engaged in the conveyance as a “sham,” Lee v. Board of Appeals of Harwich, 11 Mass.App. at 151 n.4, or with the intent to avoid the imminent applicability of a more restrictive zoning provision. See DiStefano, supra at 642-44, Sorenti v. Board of Appeals of Wellesley, supra at 349, 353. In this case, neither of these factual situations apply.
Nevertheless, the law remains that one looks at the most recent deed recorded prior to the adoption of the zoning amendment to determine the grandfathered status of the lot under Chapter 40A, §6 ¶4. Adamowicz v. Ipswich, 395 Mass. 757 (1985). At the time of that deed, there was, in essence, constructive common ownership of the adjoining lots. The number of sham or checkerboard conveyances might well increase if a developer was allowed to obtain grandfather status simply by delaying, even for an extensive period of time, before attempting to develop certain lots. Therefore, it appears to be the better rule to focus on whether there was constructive common ownership of the adjoining lots at the time of the alleged checkerboard conveyance. If there was, the party engaged in the conveyance is not entitled to the grandfathering protections of Section 6, Paragraph 4. After all, in this case, there appears to be no other legitimate explanation for the fact that each of the eleven lots conveyed to the plaintiff was a non-adjoining lot. The rule might be different in the exceptional situation where the developer could show a pattern of conduct which demonstrates a legitimate reason for the conveyance of non-adjoining lots or where there was such an extended period between conveyance and zoning enactment that the owner could not reasonably have inferred the adoption of zoning restrictions. This, however, is not such a case.
In light of the foregoing, this court holds that the Zoning Board of Appeals denial of the plaintiffs appeal was appropriate and judgment must enter for the defendant.